Scan

Link to: 2487



UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHILIP MORRIS USA INC., | Case No. CV 03-4037 GAF (PJWx) |
| Plaintiff, | |
| v. | **MEMORANDUM AND ORDER REGARDING APPLICATION FOR DEFAULT JUDGMENT** |
| SAMIR SHALABI, *et al.*, | |
| Defendant. | |

I.

INTRODUCTION

Plaintiff filed this action against the proprietors of 1,489 retail stores based on their alleged sale of counterfeit cigarettes bearing Plaintiff's trademarks. Plaintiff's Complaint alleged the following four causes of action: (1) infringement of registered trademarks in violation of Lanham Act § 32, 15 U.S.C. § 1114; (2) false designation of origin and trademark and trade dress infringement in violation of Lanham Act § 43(a), 15 U.S.C. § 1125(a); (3) unfair competition in violation of the common law of the State of California; and (4) unfair competition in violation of the California Unfair

1

2542

Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* Of the 1,489 retailers, the overwhelming majority cooperated with Plaintiff, assisting in identifying the source of the counterfeit cigarettes, and stipulating to the entry of a consent judgment. Many of the remaining retailer-defendants chose not to respond to the complaint and have either (1) not communicated at all with Plaintiff or (2) if they did initially communicate, subsequently refused to continue any meaningful settlement discussions or otherwise participate in the litigation. Plaintiff obtained an Entry of Default as to these remaining 126 Defendants (hereinafter "Defendants"). (See Exhs. 1-56 to Sullivan Decl.).

Before the Court is Plaintiff's motion for default judgment against Defendants, who allegedly sold counterfeit MARLBORO® and/or MARLBORO LIGHTS® brand cigarettes. 125 of the 126 Defendants failed to oppose Plaintiff's motion.[1] The Court concludes that this matter is capable of resolution without the argument of counsel. Therefore, the June 7, 2004 hearing set in this matter is hereby **VACATED** as to all unopposing Defendants.[2] The unopposing Defendants' disregard of their legal obligations fully justifies the remedies sought by Plaintiff. Moreover, Plaintiff has satisfied the procedural requirements for a default judgment and is entitled to the relief requested. Accordingly, the Court **GRANTS** Plaintiff's motion for a default judgment against the 125 unopposing Defendants and issues a permanent injunction enjoining those Defendants from selling counterfeit cigarettes. Additionally, the Court awards Plaintiff statutory damages in the amount of $2,000 per retailer, attorneys' fees in the amount of $400.00 per retailer, and costs in the amount of $67.51 per retailer.

---

[1] Defendant number fifteen, John T. Fuller, filed an opposition to the instant application asserting that he was not properly served with the summons and complaint and did not learn of this litigation until May 15, 2004 when he was served with Plaintiff's application for default judgment. Plaintiff has filed a reply to Mr. Fuller's opposition and contends that default judgment is appropriate. The dispute between Plaintiff and Mr. Fuller will be resolved by separate order.

[2] The hearing is not vacated with respect to Defendant Fuller. Accordingly, the parties are to appear for the hearing set in this matter at **9:30a.m. on Monday, June 7, 2004.**

2

## II.

## STATEMENT OF FACTS [3]

For several decades, Plaintiff has used the MARLBORO® mark and the MARLBORO® "Roof Design" in connection with its tobacco products. (Compl. ¶ 4). It has spent substantial time, effort, and money advertising and promoting its mark throughout the United States. (Id.). Consequently, the marks have developed significant good will, have become distinctive, have acquired secondary meaning, are among the most valuable trademarks in the world, and are among the most widely recognized product symbols by consumers in the United States. (Id. ¶¶ 4, 14,). Plaintiff is the registered owner of all the marks in question. (Id. ¶ 15; Exhs. B, C, D, E, F & G to Compl.).

Earlier this year, Plaintiff's representatives purchased packs of cigarettes bearing the MARLBORO® and/or MARLBORO LIGHTS® marks from Defendants. (Id. ¶ 12). The packaging of the cigarettes sold bore "spurious marks that were either identical with or substantially indistinguishable from the Marlboro Marks." (Id. ¶ 5). Plaintiff's testing facility, however, performed a series of proprietary tests and conclusively identified as counterfeit one or more of the packs purchased from Defendants. (Id. ¶ 12). Therefore, Defendants' acts constituted the use in commerce, without the consent of Plaintiff, of a reproduction, counterfeit, copy, or colorable imitation of Plaintiff's mark that were "passed off" as those of Plaintiff in connection with the sale, offering for sale, distribution, or advertising of goods. (Id. ¶¶ 18-28). Such conduct constitutes unfair competition and trademark and trade dress infringement, and will result in consumer confusion and/or disappointment in the difference between the imposter cigarettes and the genuine ones manufactured and

---

[3] The facts are generally culled from the complaint, the memorandum of points and authorities in support of Plaintiff's motion for default judgment, Exhibit B- G to the Complaint, the Sullivan declaration and exhibits thereto. Because Defendants did not answer the complaint, the court must accept the allegations contained in the complaint as true. FED. R. CIV. P 8(d); Fair Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002).

sold by Plaintiff and its affiliates. (Id.). Consequently, Plaintiff will suffer the loss of the enormous goodwill it has created in its products, and profits from lost sales of genuine products. (Id. ¶ 13). Because there is no adequate remedy at law for Defendants' wrongful conduct, Plaintiff prayed for injunctive relief, although Plaintiff also sought statutory damages or disgorgement of Defendants' profits and costs. (Id. at 8).

Defendants were validly served but failed to respond to Plaintiff's Complaint and are not participating in settlement negotiations or other litigation activities. (Mot. at 1). Consequently default was entered against Defendants. (Sullivan Decl Exhs. 1-56). By contrast, the other Defendants to this action cooperated with Plaintiff, assisting in identifying the source of the counterfeit cigarettes and entering into consent judgments with Plaintiff. (Mot. at 1). All in all, Defendants have left Plaintiff with no recourse, other than default judgment. (Id. at 2). In an effort to deter other Defendants from following these Defendants' course of action, Plaintiff seeks injunctive relief, statutory damages, attorneys' fees, and costs. (Id. at 2, 5-10).

III.

**LEGAL STANDARD**

Federal Rule of Civil Procedure ("FRCP") 55(b) provides for a court ordered default judgment following entry of default by the court clerk under Rule 55(a). See Kloepping v. Fireman's Fund, No. C 94-2684 TEH, 1996 WL 75314, at *2 (N.D. Cal. 1996). The FRCP and the local rules in the Central District of California require that applications for default judgment set forth the following information: (1) when and against which party default was entered; (2) the identification of the pleadings to which default was entered; (3) whether the defaulting party is an infant or incompetent person, and if so, whether that person is adequately represented; (4) that the Soldiers' and Sailors' Civil Relief Act of 1940 does not apply; and (5) that notice of the

application has been served on the defaulting party, if required. FED. R. CIV. P. 55(b)(2); C.D. Cal. L.R. 55-1.[4]

Entry of default judgment is governed by FRCP 55 and is left to the trial court's sound discretion. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). Because granting or denying relief is entirely within the court's discretion, a defendant's default does not automatically entitle a plaintiff to a court ordered judgment. Id. The Ninth Circuit holds that a district court may consider the following factors in exercising its discretion to award a default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). "In applying this discretionary standard, default judgments are more often granted than denied." PepsiCo v. Triunfo-Mex, Inc., 189 F.R.D. 431, 432 (C.D. Cal. 1999).

A party seeking a default judgment must state a claim upon which it may recover. PepsiCo Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172 (C.D. Cal. 2002). After a default has been entered by the court clerk, the well-pleaded factual allegations of the complaint are taken as true, except for those allegations relating to damages. Televideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917 (9th Cir. 1987); Discovery Communications, Inc. v. Animal Planet, Inc., 172 F. Supp. 2d 1282, 1288 (C.D. Cal. 2001). Plaintiff is required to prove all damages sought in the complaint. In addition, "[a] judgment by default shall not be different in kind [or] exceed in amount that prayed for in the [complaint]." FED. R. CIV. P. 54(c). In determining damages, a

---

[4] FED. R. CIV. P. 55(b)(2) and Local Rule 55-1(e) provide that notice is required to be given to a party against whom judgment by default is sought, if that party has appeared in the action.

court can rely on the declarations submitted by the plaintiff or order a full evidentiary hearing. FED. R. CIV. P. 55(b)(2).

Plaintiff's burden in "proving up" damages is relatively lenient. If proximate cause is properly alleged in the complaint, it is admitted upon default. Greyhound Exhibitgroup, Inc. v. E.L.U.L Reality Corp., 973 F.2d 155, 159 (2d Cir. 1992). Injury is established and plaintiff need prove only that the compensation sought relates to the damages that naturally flow from the injuries pled. Wu v. Ip, No. C93-4467 FMS, 1996 WL 428342 at *1 (N.D. Cal. 1996) (citing Greyhound Exhibitgroup, Inc., 973 F.2d at 159). However, if the facts necessary to determine damages are not contained in the complaint, or are legally insufficient, they will not be established by default. See Cripps v. Life Ins. Co. of N. America, 980 F.2d 1261, 1267 (9th Cir. 1992).

Finally, fundamental fairness, required by the due process of law, limits the scope of relief. Schwarzer, et al., California Practice Guide: Federal Civil Procedure Before Trial § 6:131 (2003). Under FRCP 54(c) and 55(d), a judgment by default shall not award damages that are different or exceed the amount requested in plaintiff's complaint. Similarly, under FRCP 8(a)(3), the demand for relief must be specific. Therefore, a default judgment must be supported by specific allegations as to the exact amount of damages asked for in the complaint.

## IV.

## ANALYSIS

### A. PLAINTIFF HAS SATISFIED THE PROCEDURAL REQUIREMENTS FOR DEFAULT JUDGMENT BY COMPLYING WITH FRCP 55(a), FRCP 54(c), AND LOCAL RULES 55-1 AND 55-2

Plaintiff has satisfied the procedural requirements for default judgment pursuant to FED. R. CIV. P. 55(a), Local Rules 55-1 and 55-2, and FED. R. CIV. P. 54(c). In the pending action, Plaintiff (1) served Defendants with the summons and complaint, Sullivan Decl.; Mot. at 1; (2) caused the clerk to enter the default against Defendants for failure to answer, Sullivan Decl. Exhs. 1-56; (3) stated that Defendants

1 are not minors or incompetents lacking adequate representation, Sullivan Decl.; Mot.
2 at 3; (4) stated that Defendants are not in the military or otherwise exempt under the
3 Soldiers' and Sailors' Civil Relief Act of 1940, id.; (5) given notice of this application
4 for default judgment, id.; (6) and notified Defendants as to the amount requested.
5 (Id.). Finally, because Plaintiff does not request relief that differs from or exceeds that
6 prayed for in the complaint, the application for default judgment complies with FRCP
7 54(c). Accordingly, the Court need only analyze the Eitel factors to determine
8 whether default judgment is appropriate.

### B. EITEL FACTORS SUPPORT GRANTING DEFAULT JUDGMENT AGAINST DEFENDANTS

#### 1. Possibility of Prejudice to Plaintiff

With respect to the first Eitel factor, Plaintiff would suffer prejudice if the default judgment is not entered because Plaintiff would be without other recourse for recovery. Furthermore, in light of the fact that Defendants defaulted, thereby admitting the averments of the complaint, Plaintiff will likely suffer prejudice if default is not entered.

#### 2. Substantive Merits and Sufficiency of the Complaint

The second two Eitel factors "require that a plaintiff state a claim on which the [plaintiff] may recover." Cal. Sec. Cans, 238 F. Supp. 2d at 1175 (citations and quotations omitted). In order to weigh these two factors, the Court must review Plaintiff's claims. In this case, Plaintiff has adequately pleaded all four causes of action against Defendants: 1) trademark infringement; 2) false designation of origin and trade dress infringement; 3) California common law unfair competition; and 4) statutory unfair competition.

To prevail on its trademark infringement claim under 15 U.S.C. § 1114(1)(a), Plaintiff must prove that, without its consent, Defendants used in commerce a reproduction or copy of a registered trademark in connection with the sale or advertising of any goods or services, and that such use is likely to cause confusion, mistake, or deceive customers. 15 U.S.C. § 1114(a)(1).

7

1    To prevail on its false designation of origin claim, Plaintiff must establish that
2    Defendants used in commerce any word, term, name, symbol, or device, or any
3    combination thereof, or any false designation of origin, false or misleading description
4    of fact, or false or misleading representation of fact, which is likely to cause confusion,
5    or to cause mistake, or to deceive as to the affiliation, connection, or association of
6    Defendants with Plaintiff, or as to the origin, sponsorship, or approval of his goods by
7    Plaintiff. 15 U.S.C. § 1125(a)(1)(A)
8    To prevail on its common law unfair competition claim, Plaintiff must prove
9    that Defendants tried to pass off false goods as those of Plaintiff. See, e.g., Bank of
10   the West v. Superior Court, 2 Cal. 4th 1254, 1263 (1992).
11   Finally, to prevail on its unfair competition claim under Cal. Bus. & Prof. Code
12   §17200, et seq., Plaintiff must show that Defendants engaged in "any unlawful, unfair
13   or fraudulent business act or practice and unfair, deceptive, untrue or misleading
14   advertising." CAL. BUS. & PROF. CODE § 17200.
15   Plaintiff's Complaint properly alleges the necessary elements for each of its
16   four causes of action. The Complaint identifies Plaintiff's incontestable, registered
17   trademarks, the extent to which Plaintiff has used the marks, and the fame of the
18   marks. (Compl. ¶¶ 4, 14-16). Plaintiff also alleges that Defendants used the marks in
19   commerce, in connection with the sale of counterfeit cigarettes, without Plaintiff's
20   consent. (Compl. ¶¶ 5, 12, 18-21). In addition, Plaintiff's Complaint alleges that
21   Defendants' use of Plaintiff's marks is likely to cause confusion or mistake or to
22   deceive customers and has thereby damaged Plaintiff. (Id. ¶¶ 5-6, 13, 21). Again, as
23   Defendants' failure to answer constitutes an admission as to the averments contained
24   in the complaint, the Court must accept these allegations as true. FED. R. CIV. P. 8(d).
25   Accordingly, the second and third Eitel factors likewise favor entry of default judgment
26   against Defendants.
27
28

### 3. Amount at Stake

Pursuant to the fourth Eitel factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." Cal. Sec. Cans., 238 F. Supp. 2d at 1176; see also Eitel, 782 F.2d at 1471-72. Under the Lanham Act, a plaintiff may recover statutory damages of "not less than $500 and up to $100,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c). In its complaint, Plaintiff alleges Defendants sold counterfeit cigarettes that infringed MARLBORO® and/or MARLBORO LIGHTS® trademarks. (Compl. ¶12; Mot. at 5). Under the Lanham Act, Plaintiff is entitled to recover up to $400,000 from a retailer that sold both counterfeit MARLBORO® and MARLBORO LIGHTS® cigarettes. (Mot. at 5). As to those retailers that sold either counterfeit MARLBORO® or counterfeit MARLBORO LIGHTS® cigarettes, but not both, Plaintiff is entitled to up to $200,000 in statutory damages. (Mot. at 6). The amount at stake, however, is relatively small because Plaintiff seeks only statutory damages, not the recovery of lost profits or actual damages. Given Defendants' infringing use of the marks is likely to cause confusion or mistake or to deceive customers, their failure to comply with the judicial process, and their unwillingness to engage in settlement negotiations with Plaintiff, a monetary award and injunctive relief are appropriate. Accordingly, this factor favors granting default judgment.

### 4. Possibility of Dispute

The fifth Eitel factor considers the possibility of dispute as to any material facts in the case. Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages. TeleVideo Sys., Inc., 826 F.2d at 917-18. Here, Plaintiff filed a well-pleaded complaint alleging the facts necessary to establish its claims, and the court clerk entered default against Defendants. Thus, no disputes exist as to material facts, and this factor favors granting default judgment.

### 5. Possibility of Excusable Neglect

The sixth Eitel factor considers the possibility that the default resulted from excusable neglect. Due process requires that all interested parties be given notice, reasonably calculated to apprize them of the pendency of the action and be afforded an opportunity to present their objections before a final judgment is rendered. Mullane v. Central Hanover Trust Co., 339 U.S. 306, 314 (1950). In this case, Defendants received notice of both the complaint and the request for entry of default. (Proof of Service of November 7, 2003). Defendants failed to answer the complaint and have not opposed this motion. In light of the various notifications Defendants received regarding the lawsuit pending against them, the extended period of time that has elapsed, and their resistance to Plaintiff's attempts to resolve this matter through settlement, the possibility of excusable neglect is remote. Accordingly, the Court should conclude that the default did not result from excusable neglect, but rather from willful disobedience, and therefore the sixth Eitel factor favors granting a default judgment.

### 6. Policy for Deciding on the Merits

Finally, the mere existence of FED. R. CIV. P. 55(b) indicates that the final Eitel factor is not alone dispositive. Cal. Sec. Cans., 238 F. Supp. 2d at 1177. Moreover, Defendants' failure to answer the complaint makes a decision on the merits impractical, if not impossible. Under FRCP 55(a), termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action. Id. This is precisely what occurred in the present case. Therefore, this factor does not preclude the Court from entering default judgment against Defendant. Id.

### C. REMEDIES

FRCP 54(c) allows only the amount prayed for in the complaint to be awarded to the plaintiff in a default. Under FRCP 8(a)(3), the demand for relief must be specific. In addition, Plaintiff must "prove up" the amount of damages that it is claiming. In the instant motion, Plaintiff seeks a permanent injunction, statutory

10

damages in an amount of $2,000 per retailer, $400 in attorneys' fees per Defendant, and costs in the amount of $67.51 per retailer. These remedies are not different in kind from that prayed for in the complaint.

### 1. Statutory Damages are Appropriate

Plaintiff is entitled to statutory damages. Under the Lanham Act, a plaintiff may recover statutory damages of not less than $500 and up to $100,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed. 15 U.S.C. § 1117(c). As this provision is a recent addition to the Lanham Act, there is little case law available to assist courts in determining an appropriate award. Consequently, courts faced with determining statutory damages under the Act have analogized to the body of case law interpreting a similar provision in the Copyright Act. Deterrence of future infringement is an important factor in determining damages under the Copyright Act, and therefore an award of statutory damages need not equal the amount of a plaintiff's actual damages. See F.W. Woolworth Co. v. Contemporary Arts, Inc., 344 U.S. 228, 233 (1952) (holding that the discretion of the court is wide enough to permit a resort to statutory damages for the purpose of deterring wrongful conduct); Peer Int'l Corp. v. Pausa Records, Inc., 909 F.2d 1332, 1336-37 (9th Cir. 1990).

Plaintiff alleges that it is entitled to up to $200,000 or $400,000 in statutory damages. (Mot. at 5). Plaintiff, however, only seeks $2,000 per retailer, substantially less than the statutory maximum permissible. Plaintiff seeks to deter Defendants and others from infringing Plaintiff's trademarks by selling counterfeit cigarettes. (Id. at 7). Accordingly, an award of $2,000 per retailer is appropriate because it is reasonably calculated to serve as a deterrent and is, by Lanham Act standards, an extremely conservative award. (Id.).

### 2. Injunctive Relief is Appropriate

Plaintiff is also entitled to permanent injunctive relief. The Lanham Act gives the Court "power to grant injunctions according to the rules of equity and upon such

11

terms as the court may deem reasonable, to prevent the violation" of a mark holder's rights. 15 U.S.C. § 1116(a); Levi Strauss & Co. v. Shilon, 121 F.3d 1309 (9th Cir. 1997); Cal. Sec. Cans, 238 F. Supp. 2d at 1177-78. In this instance, Plaintiff requests that the Court issue a permanent injunction against Defendants that includes the following material terms:

    1. A prohibition against purchasing, selling, offering for sale, or otherwise using in commerce any counterfeit MARLBORO® and/or MARLBORO LIGHTS® brand cigarettes;

    2. A prohibition against assisting, aiding, or abetting any other person or entity in purchasing, offering for sale, or otherwise using in commerce any counterfeit MARLBORO® and/or MARLBORO LIGHTS® brand cigarettes;

(Mot. at 9).

The Court finds this injunctive relief to be appropriate. The Court has already approved hundreds of similar permanent injunctions against other Defendants, both in this action, and in related cases. (Id.; Exh E to Mot.). Despite the fact that Defendants are well aware of Plaintiff's claims, they have chosen to ignore this lawsuit. Given that Defendants behavior does not appear to have been affected by the filing of this lawsuit, the Court **GRANTS** Plaintiff's request for a permanent injunction to protect Plaintiff from future sales of counterfeit cigarettes by Defendants.

**3. Attorneys' Fees are Appropriate**

Section 1117(a) of the Lanham Act gives the Court discretion to award reasonable attorneys' fees to the prevailing party in "exceptional cases." 15 U.S.C. § 1117(a). The term "exceptional cases" is generally accepted to mean cases in which trademark infringement is "malicious, fraudulent, deliberate or willful." See Lindy Pen Co. v. Bic Pen Corp., 982 F.2d 1400, 1409 (9th Cir. 1993); Playboy Enters., Inc. v. Baccarat Clothing Co., Inc., 692 F.2d 1272, 1276 (9th Cir. 1982). Additionally, a case may be deemed "exceptional," and merit an award of attorneys' fees under the

12

Lanham Act, when the defendant disregards the proceedings and does not appear. Taylor Made Golf Co., Inc. v. Carsten Sports Ltd., 175 F.R.D. 658 (S.D. Cal. 1997). Defendants' failure to meet their obligations in this case constitutes exceptional circumstances warranting an award of attorneys' fees.

Defendants' refusal to communicate with Plaintiff has had the beneficial side effect of reducing Plaintiff's counsel's time and effort expended in attempting to resolve the lawsuit with respect to those retailers. (Mot. at 10). Therefore, Plaintiff seeks a minimal award of attorneys' fees in the amount provided by the fee schedule under Local Rule 55-4. (Id.). For a damage award of $2,000, the Fee Schedule provides for an award of $400 in attorneys' fees. Accordingly, the Court **GRANTS** Plaintiff's request for attorneys' fees and awards Plaintiff fees in the amount of $400 per retailer.

### 4. Costs are Appropriate

Finally, 15 U.S.C. § 1117(a)(3) also authorizes an award of the costs of a civil action brought pursuant to § 1114. Plaintiff seeks reimbursement of costs, such as service of process fees ($50.00 per retailer), court filing fees ($15.75) per retailer, and copying costs ($1.76 per retailer). (Sullivan Decl. ¶ 2; Mot. at 11). Plaintiff, therefore has incurred a total of $67.51 in litigation expenses with respect to each retailer-defendant. The Court should find these costs to be reasonable and accordingly **GRANTS** Plaintiff's request for an award of costs in the amount of $67.51 per retailer.

## V.
## CONCLUSION

For the foregoing reasons, Plaintiff's motion for default judgment is **GRANTED** and the requested damages, attorney fees, costs, and permanent injunctive relief are awarded. The June 7, 2004 hearing set in this matter is **VACATED**.

IT IS SO ORDERED.

DATED: June 3, 2004

_____
Judge Gary Allen Feess
United States District Court